**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

LA PALOMA DEL SOL II
LIMITED PARTNERSHIP, et al.,

      Plaintiffs,

vs.                                                                             No. CIV 00-1304 JC/WWD

UNITED STATES OF AMERICA, et al.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court as Plaintiff's appeal from administrative action pursuant to the Administrative Procedures Act, 5 U.S.C. § 706. Having considered the briefs, the exhibits submitted by the parties, the administrative record and the relevant law, the Court affirms the agency action in its entirety.

**I.**     **Background**

Plaintiffs in this matter consist of one individual, Deke Noftsker, and four limited partnerships, La Paloma Del Sol II Limited Partnership; Hidden Valley Limited Partnership; Depot Limited Partnership; and Rio Verde Limited Partnership (collectively "Partnerships"). The Partnerships were all borrowers under the Rural Development Rural Rental Housing ("RRH") Section 515 Program and operated RRH projects under the same names as the Partnerships. Plaintiff Noftsker serves as general partner of each Partnership entity. Plaintiffs appeal from an adverse decision of the Rural Development New Mexico ("Agency"), an agency under the United States Department of Agriculture ("USDA"). The Agency oversees, regulates, administers, manages and

supervises recipients of all multi-family housing loans when such loans have been made by the Farmers Home Administration ("FHA").

In July of 1998, the USDA Office of Inspector General ("OIG") released an audit report detailing a host of management deficiencies in the Plaintiff Partnerships. AR, I: 4-8. The OIG made seventeen recommendations to bring the Partnerships into compliance; ultimately, the Partnerships resolved fifteen of the matters to the satisfaction of the OIG. *Id*. On the remaining issues, Plaintiffs disagreed with the Agency's determination that they were noncompliant and appealed two issues to a USDA National Appeals Division ("NAD") Hearing Officer. The Hearing Officer found in favor of Plaintiffs on one issue and in favor of the Agency on the other. Both the Agency and the Plaintiffs requested Director review of the determination adverse to them. The Director heard the Agency's appeal and reversed the Hearing Officer's prior determination in favor of Plaintiffs. The Director also upheld the Hearing Officer's prior decision in favor of the Agency. Plaintiffs' request for Director review was denied on procedural grounds, though the issue appears to have been considered by the Director as part the Agency's appeal. Specifically, each project operated by the Partnerships executed a loan agreement requiring the Partnerships to deposit an initial two percent operating and maintenance ("O & M") capital into the general fund account. The loan agreements further provided that the funds would be held in the form of either cash or an irrevocable letter of credit. Further, the interest from the O & M capital was to be held in the project's general operating account. The Director made a final determination that 1) the Partnerships' certificate of deposit holdings were not qualified vehicles for the O & M funds under the regulations and the loan agreements, and 2) that the interest generated thereon did not belong to the Plaintiff Partnerships but belonged, instead, to the project.

Plaintiffs filed their Complaint for Judicial Review, Violation of Civil Rights, and for Preliminary and Permanent Injunctive Relief on September 15, 2000 (*Doc. 1*).  This Court held a status conference on March 14, 2002, in which it determined that Plaintiffs had petitioned the Court for judicial review of agency action under Section 706 of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706.  Pursuant to this Court's Order, filed March 19, 2002 (*Doc. 18*) and *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994) (Reviews of agency action in the district courts must be processed as appeals), the parties filed briefs in accordance with the Federal Rules of Appellate Procedure.

**II.     Standard of Review**

Section 706 of the Administrative Procedures Act ("APA") reads as follows:

§ 706.  Scope of Review

...the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall–
 (1) compel agency action unlawfully withheld or unreasonably delayed; and
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be–
  (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
  (B) contrary to constitutional right, power, privilege, or immunity;
  (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
  (D) without observance of procedure required by law;
  (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
  (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

 In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

3

5 U.S.C. § 706 (2002).  The duty of a court reviewing agency action under the "arbitrary or capricious" standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made.  *Olenhouse*, 42 F.3d at 1574 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29 (1983)).  In reviewing the agency's explanation, a reviewing court must determine whether the agency considered all relevant factors and whether there has been a clear error of judgment.  *Olenhouse*, 42 F.3d at 1575.  Agency action will be set aside "if the agency relied on factors which Congress has not intended for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id.* (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).  If the agency itself has not provided a reasoned basis for its action, the court may not supply one.  *Motor Vehicle Mfrs.*, 463 U.S. at 43.  Nonetheless, the reviewing court may not substitute its judgment for that of the agency and must give substantial deference to agency determinations.  *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 377(1989).

In civil cases such as this, the party challenging the action below bears the burden of establishing that the alleged error prejudiced that party.  *Creekmore v. Crossno*, 259 F.2d 697, 698 (10th Cir. 1958); *All Indian Pueblo Council v. United States*, 975 F.2d 1437, 1443 (10th Cir. 1992) ("The harmless error rule applies to judicial review of administrative proceedings.").

**III.   Discussion**

    **A.   Denial of Plaintiffs' Request for Director Review**

Plaintiffs challenge as arbitrary and capricious the Agency's denial of their request for director

review of the Hearing Officer's adverse determination. Plaintiffs submitted their request for review on October 22, 1999, the final of the 30 days allowed by regulation. Their request was denied because Plaintiffs failed to "personally sign" the request for review, as required by Title 7 of the Code of Federal Regulations § 11.9(a)(1). The regulation states, in relevant part, "[n]o later than 30 days after the date on which appellant receives the determination of a Hearing Officer under § 11.8, the appellant must submit a written request, *personally signed by the named appellant*, to the Director to review the determination in order to be entitled to such review by the Director." 7 C.F.R. § 11.9(a)(1) (emphasis added). Here, Plaintiffs' attorney, Mark P. Geiger, signed Plaintiffs' written request for Director review and it was denied as a result. Plaintiffs contend that denial of review solely on the basis that their attorney signed on their behalf was arbitrary and capricious, as limited partnerships cannot "personally sign" a document and must always do so through a representative. The Agency responds that the denial was proper discretionary enforcement of its procedural rules and is, therefore, not reviewable under the APA.

The National Appeals Division Rules of Procedure, 60 Fed. Reg. 67,298, 67,304 (Dec. 29, 1995), discusses the purpose of the personal signature requirement of Section 11.9(a)(1). It states:

> The intention behind this requirement is to ensure that participants are fully aware of the implications of actions being taken on their behalf in the appeals process. By requiring that they personally sign requests for Director review of appealability, requests for hearing, and requests for Director review of Hearing Officer determinations (§ 11.9(a)), participants will be taking personal responsibility for such actions when represented by another. Authorized representatives also will be required to keep participants informed in order to get their signature authorizing proceeding to each new phase of a NAD appeal. USDA's concern is to ensure that participants are giving informed consent to the decisions undertaken in [sic] their behalf by their representatives, and, by requiring execution of a declaration of representation, that NAD is assured that purported representatives are who they actually claim to be.

National Appeals Division Rules of Procedure, 60 Fed. Reg. at 67,304. The Court notes that

5

agencies are entitled to deference in interpreting their own regulations. *Udall v. Tallman*, 380 U.S. 1, 4 (1965); *Renfro v. City of Emporia*, 948 F.2d 1529, 1537 (10th Cir. 1991). In light of the regulation and its stated purpose, Plaintiffs erroneously present the Declaration of Entry of Appearance and Authorization for Representation and Release of Information as evidence that Mr. Geiger was vested with the authority to sign for the partnerships where a personal signature of the *named appellant* was required by regulation. Pls.' Op. Brief at 13. Plaintiffs assert that the agency's action in enforcing the regulation is "ripe with bad faith" and that "its motives should be more closely examined by the Court." Pls.' Reply at 8. Ironically, upon just such close examination, the Court finds that the regulation's very purpose is to prevent the named representative from signing in place of the appellant in order to insure informed consent on the part of the appellant. While it is true that a partnership entity must always sign documents via an agent or authorized representative, attorney representation of a partnership in an NAD appeal alone does not vest the attorney with the authority to act *as* the partnership in all matters. Instead, it is a partnership's designated officer or employee (in this case, Mr. Noftsker as managing general agent, perhaps) who is authorized to act "personally" for a limited partnership entity.[1] Moreover, the regulations specifically discuss personal signature requirements in the context of non-individual entities as follows:

> Even though the requirement is expressed using the term "personally," it also is reasonable to interpret that term as applying to a responsible officer or employee of an entity where the definition of "participant" in § 11.1 [and § 11.9 by analogy] encompasses an "entity" as well as an "individual."

National Appeals Division Rules of Procedure, 64 Fed. Reg. at 33,369. Had the Director rejected a request for review signed by Mr. Noftsker or other authorized officer or employee of the

---

[1]As general agent, Mr. Noftsker signed the RRH promissory notes, for instance.

6

Partnerships as improper under the regulation, Plaintiffs' argument would have force. Here, however, Mr. Geiger improperly signed the document in the partnerships' stead; his doing so clearly violated the NAD's published procedure and created adequate grounds for the Agency to deny Plaintiffs' request if it so chose.[2] In sum, the Court finds no bad faith or ill motive on the part of the Agency. The Court further finds that the Agency's denial of Plaintiffs' request for Director review on this procedural ground was within its discretion.

**B.     Untimely Entry of Agency Decisions**

**i. Director's Untimely Decision on Agency's Appeal**

Plaintiffs also argue that the Director's decision on the issue appealed by the Agency, which reversed the Hearing Officer's only decision in favor of Plaintiffs, should be dismissed for the Director's failure to comply with established procedure requiring that he enter such decision within ten days of receiving a request for review. Specifically, the relevant regulation reads, "[t]he Director will complete the review and either issue a final determination or remand the determination not later than--10 business days after receipt of the request for review, in the case of a request by the head of an agency...." 7 C.F.R. § 11.9(d)(2)(i). Here, the Agency's request for review was received on or about October 7, 1999 and the Director Review Determination was issued on February 11, 2000.

Examining the Agency's published interpretation of the relevant regulation is again helpful. It reads, in pertinent part:

---

[2]As aptly noted by the Director of the NAD in another matter and later quoted by the reviewing court in that case, "an attorney is ordinarily responsible for knowing published requirements pertaining to the matters for which he or she undertakes a representative role." *Branstad v. Veneman*, 212 F. Supp. 2d 976 (N.D. Iowa 2002). The regulations express a similar sentiment, stating that "it is reasonable to expect that authorized representatives seeking to file appeals before NAD would check the rules of the forum for filing requirements." National Appeals Division Rules of Procedure, 64 Fed. Reg. at 33,369.

7

> ...the deadlines set by the Act for the Director to issue a final determination or to remand to the Hearing Officer may be unrealistic at any given time because of caseload or the complexities of a particular appeal. Although the USDA believes the failure to meet these deadlines does not deprive the Director of jurisdiction to reach a determination or issue a remand order, it fully intends to follow such deadlines to the extent possible in order to deliver fairly considered determinations of the Director that will withstand judicial review. Hastily rendered determinations that fail to develop an adequate decision for judicial review do not benefit either USDA or appellants. Therefore, while USDA has added no provision affirmatively authorizing the Director to extend the period for issuance of determinations, USDA recognizes that it may be necessary for the Director to do so in individual cases in order to facilitate a fair and equitable resolution of the appeal.

National Appeals Division Rules of Procedure, 60 Fed. Reg. at 67,305. While it is clear and undisputed that the determination was issued nearly four months after the Agency's request was received, the passage above indicates that the Director enjoys the discretion necessary to extend the time period when a given matter so requires. In this case, however, the Court need not decide whether this was a reasonable extension of time, necessary to deliver a fairly considered determination, because Section 706 of the APA states that when a court reviews an administrative record, "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. *See also All Indian Pueblo v. United States*, 975 F.2d 1437, 1443. Assuming, *arguendo*, the Director extended the time beyond what was necessary in this case, Plaintiffs bear the burden of demonstrating that they were prejudiced by the delay. Plaintiffs offer no evidence on this issue and, therefore, have not born their burden. The Court finds no prejudicial error on the facts and evidence before it and holds the delay in the Director's determination to be harmless error, at worst.

### ii. Director's Denial of Plaintiffs' Request for Reconsideration

Plaintiffs requested reconsideration of the denial of Director review on March 1, 2000 and the Director issued a denial of that request on May 12, 2000. Plaintiffs now ask the Court to vacate

the denial as untimely. The passage above pertaining to Director's deadlines applies to issuance of a denial of a request for reconsideration, as such denial constitutes a "final determination." National Appeals Division Rules of Procedure, 60 Fed. Reg. at 67,305. Again, however, it is unnecessary for the Court to determine whether two and one-half months was a reasonable and necessary extension of time in this case, for it is well settled that the rule of prejudicial error applies to judicial review of administrative action under 5 U.S.C § 706. Plaintiffs have failed to advance any argument or present the Court with any facts upon which to find they were prejudiced by the length of time it took for the Director to issue the denial of reconsideration. Therefore, without considering whether the Director's extension was a proper exercise of his discretion, the Court holds that any error committed by the delay was harmless in nature.

### C. Director's Reversal of Hearing Officer's Determination Regarding the Two-Percent Operating and Maintenance Account

Plaintiffs argue that the Director reversed the Hearing Officer's decision against the Agency "without consideration of and contrary to the evidence and without any stated rationale or basis for" the reversal. Pl.'s Op. Brief at 7. At issue here is the Director's reversal of the Hearing Officer's determination, issued September 22, 1999, which reversed the Rural Housing Service's decision in favor of Plaintiffs regarding the operating and maintenance ("O & M") account and disposal of interest earned thereon. Regulations at 7 C.F.R. § 1944.211 (a)(6)(i) require that the initial two percent of O & M expense, plus any amount necessary for these items above the two percent, must be provided in cash. 7 C.F.R. § 1944.211 (a)(6)(ii) further requires that the O & M cash will be deposited into the general operating account in accordance with the loan agreement. 7 C.F.R. Part 1930 (C), Exh. B paragraph XIII B 2(a)(1)(i) provides that the initial operating capital may be in the

9

form of cash, an irrevocable letter of credit, or in a combination of the two as described in 7 C.F.R. § 1944.211.

Plaintiff Partnerships held the two percent O & M in certificates of deposit ("CDs"). The Director determined that this did not meet the requirements of the regulation or comply with the terms of the Plaintiffs' loan agreements. The Director's reasoned basis for determining that CDs do not meet the requirements is the language of the regulations themselves, which the Director notes "provide no exceptions to the requirement of cash or letter of credit." AR, I: 485. Plaintiffs assert that the Agency was aware of the fact that the O & M was kept in CDs and, therefore, Plaintiffs cannot be found in noncompliance as a result. The Director's determination, however, further states that "notwithstanding the Agency's awareness of the manner in which the O & M account was being maintained or its availability, the Appellants have not provided the requisite two percent cash deposit *to the general operating account*. Substantial evidence does not support the Hearing Officer's determination that the Agency erred in its decision that the O & M funds have not been properly provided" AR, I: 485. (emphasis added).

The Court reviews the Director's determination to find if there is a reasoned basis for agency action, supported by the facts in the record. In this case, Plaintiffs do not dispute the fact that the O & M funds were held in CDs; they instead disagree with the Director's interpretation that the regulations allow only for cash or an irrevocable letter of credit to be held in the general account, with no exceptions. Plaintiffs prefer the Hearing Officer's prior interpretation that CDs may be considered equivalent to a letter of credit for purposes of satisfying the loan agreement and the regulation. Plaintiffs' preference for a different result, however, does not establish that the Agency relied on factors which Congress has not intended for it to consider, entirely failed to consider an important

10

aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the Agency, or is so implausible that it could not be ascribed to a difference in view or the product of Agency expertise. *Olenhouse*, 42 F.3d at 1575. Instead, the Court finds that the Director's final determination that the CD holdings did not comply with the regulation and the loan agreements is supported by a permissible, literal interpretation of the Agency's own regulation. Therefore, the Director articulated a rational connection between the facts found and the decision made. The Court defers to such Agency interpretation and affirms the Director's final determination with respect to the O & M holdings.

Also at issue is the disposal of interest earned on the O & M funds. Plaintiffs argue that the Director's determination regarding the disposal of the interest was arbitrary and capricious and not in accordance with the law. The Court disagrees. The Director reached the conclusion, based upon undisputed facts, that the interest generated by the CDs belongs to the project and must be deposited into the general operating account. His reasoned basis for such determination reads as follows:

> Regulations at 7 CFR Part 1930, Subpart C, Exhibit B, paragraph XIII B A (2)(a)(2) require that all income and revenue from the housing project shall, upon receipt, be immediately deposited in the general operating account. This includes interest earned on project accounts. Regulations at paragraph XIII B 2(a)(1)(iii) provide that the two percent initial O & M deposit is a requirement to participate in the program. Under certain conditions, a one-time withdrawal of the initial operating capital, or part of it, can be made. The one-time withdrawal can never exceed the initial operating capital.
>
> The O & M are [sic] a project account; therefore any interest earned on the initial deposit must be included as income in the normal budgeting process. The Appellants assert that interest earned on the O & M funds belongs to the partnerships, not to the projects. However, O & M funds are blended with the projects' general operating funds; interest earned on any project account must be deposited to the general operating account. Further, because the one-time withdrawal cannot exceed the initial operating capital, any interest earned on the capital cannot be withdrawn by the limited partnerships. Substantial evidence supports the Hearing Officer's determination that the Agency did not err in the decision that the interest earned on

>the O & M funds is owed to the project.

AR, I: 485.  The Court finds a reasoned basis for the Director's determination that the Hearing Officer's decision was correct in the above passage, which speaks for itself.  The Director's determination is, therefore, affirmed.

### D.    Plaintiff Noftsker's Individual Claim Under the Equal Protection Clause

Finally, individual Plaintiff Deke Noftsker claims the Agency acted in a manner contrary to the law of due process.  Mr. Noftsker's contention appears to be that the Agency has "blackballed," or barred, him from future participation in government programs without having named him individually in any Agency proceeding, and in so doing has deprived him of notice and opportunity to be heard as required by the Due Process Clause of the Fourteenth Amendment.  Pl's Op. Brief at 22, 23.

As a general rule, judicial review of an agency decision is limited to a review of the record developed during the administrative process.  *Custer County Action Ass'n v. Garvey*, 256 F. 3d 1024, 1027, fn. 1 (10th Cir. 2001), citing *Federal Power Commn v. Transcontinental Gas Pipe Line Corp*., 423 U. S. 326, 331 (1976); O*lenhouse v. Commodity Credit Corp*., 42 F. 3d at1580.  However, a reviewing court may consider materials outside of the administrative record in certain very limited circumstances.  C*uster County Action Ass'n*, 256 F. 3d at 1027.  Pursuant to this Court's Memorandum Opinion and Order, filed September 17, 2001 (*Doc. 12*), however, Plaintiffs were granted permission to conduct discovery and supplement the record on Plaintiff Noftsker's individual claim alleging an equal protection violation.  Specifically, Judge Vasquez's Order states, "Plaintiffs shall be permitted to conduct discovery, and to present evidence outside the administrative record, *only* with respect to their claim that they are being intentionally treated differently from others

similarly situated and that there is no rational basis for the difference in treatment." *Id*. (emphasis added).  Curiously, Plaintiffs' opening brief on appeal makes no mention of Plaintiff Noftsker's prior equal protection claim but instead contains a document pertaining to his claim of due process violation.  Plaintiff has provided a letter, attached as Exhibit A to Plaintiffs' opening brief in this appeal, from a representative of the Multi-Family Housing loan department of the USDA.  The letter is dated March 21, 2002, and it denies consideration of an application to substitute Mr. Noftsker for another individual as general partner of Central New Mexico Limited Partnership until there exists a satisfactory resolution of Plaintiffs' prior noncompliance issues.  It states, "...any audits or investigations conducted by the Office of Inspector General (OIG) must be closed or disposed of to the satisfaction of OIG before we can proceed with any further evaluation.  It is our understanding that final action on the part of the District Court in New Mexico has not occurred at this point....*You have the right to appeal this decision.  See attachment for your appeal rights*."  Pl.'s Op. Brief, Ex. A. (Emphasis added.).

     Plaintiff's submission of this document is problematic in that it supports a due process claim, notwithstanding this Court having expressly limited supplementation of the record to Plaintiff's equal protection claim, which he has now abandoned.  Further, the proffered document itself, if considered by the Court, indicates that Plaintiff had administrative appeal procedures available to him on this issue.  To the Court's knowledge, Plaintiff has not pursued any such appeal or obtained a final determination by the agency, which is a prerequisite for judicial review.  If the Court disregards the document as beyond the permissible scope of administrative review and in direct defiance of its September 17, 2001 Order, the Court has nothing whatsoever to review on this claim.  This is so because a proper administrative record has not been developed through appeal.  If the Court

13

considers the document, it reaches the same, inevitable conclusion--Plaintiff Noftsker has not obtained a final agency determination for the Court to review, as the letter provides for appeal which Plaintiff has not pursued.[3] Lacking a final determination, this Court is without jurisdiction to entertain the claim. Therefore, the Court denies review of Plaintiff Noftsker's individual claim that the Agency violated his right to due process of law.

## IV.   Conclusion

In sum, the Court finds that the Agency's denial of Plaintiffs' request for director review was within its discretion, the timing of the Director's decisions is harmless error, if error at all, and Plaintiff Noftsker's individual claim for violation of due process cannot be reviewed for lack of a final agency determination.

Wherefore,

**IT IS ORDERED** that the agency action with respect to Plaintiff Partnerships is affirmed in its entirety.

**IT IS FURTHER ORDERED** that Plaintiff Noftsker's claim of due process violation is denied review.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[3] Moreover, Plaintiff cannot claim a violation of his right to due process when he has not taken advantage of the process available to him.

Counsel for Plaintiffs:

>Mark P. Geiger
>Albuquerque, New Mexico

Counsel for Defendants:

>Raymond Hamilton
>AUSA
>Albuquerque, New Mexico